# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Leroy Leftwich, trustee of the statutory class of next of kin to Cameron Leftwich, decedent,<br><br>      Plaintiff,<br><br>v.<br><br>County of Dakota et al.,<br><br>      Defendants. | Civ. No. 18-1144 (JNE/BRT)<br><br>**ORDER** |

This matter is before the Court on Plaintiff's Motion to Amend Scheduling Order to Extend Time and to Amend Complaint. (Doc. No. 30.) In his motion, Plaintiff requests that the scheduling order be amended to permit the untimely filing of an amended complaint adding new alleged customs and practices to support Plaintiff's constitutional tort claims. The proposed new claims include four additional customs and practices against the City of Eagan and two additional customs and practices against the County of Dakota. (Doc. No. 30-1.) The Court held a hearing on Plaintiff's motion on January 22, 2019. (Doc. Nos. 40, 53.) At the hearing, Plaintiff requested supplemental briefing, which was permitted over Defendants' objections. (Doc. No. 40.) Plaintiff submitted his supplemental brief on February 5, 2019,[1] and the Defendants responded on February 19.

---

[1]  Plaintiff was granted leave to file a twenty-page supplemental brief. (Doc. No. 53, 1/22/19 Hearing Transcript ("Hr'g Tr.") 87.) His supplemental brief was right at twenty pages, and was accompanied by a twenty-nine-page declaration and over 900 pages of exhibits.

(Doc. Nos. 45, 46, 54–56.) The Court later permitted Plaintiff to file a reply on February 28, 2019. (Doc. No. 60.)

Defendants oppose Plaintiff's motion for lack of good cause because Plaintiff was not diligent in meeting the October 29, 2018 deadline for amending the pleadings. Defendants also argue that allowing an untimely amendment would be prejudicial.

For the reasons stated below, Plaintiff's motion to amend (Doc. No. 30) is denied.[2]

---

[2] This case ("*Leftwich I*") was filed on April 27, 2018. (Doc. No. 1.) Plaintiff's motion to amend was filed on January 2, 2019. (Doc. No. 30.) A hearing was held on January 22, 2019. (Doc. No. 40.) At the hearing, Plaintiff's request for supplemental briefing was granted. All supplemental briefing on Plaintiff's motion was completed on February 28, 2019. (Doc. No. 60.) Meanwhile, on February 18, 2019, Plaintiff filed a related case. *See Leftwich v. County of Dakota et al.*, 19-cv-393 (D. Minn.) ("*Leftwich II*"). In *Leftwich II*, Plaintiff alleges the same new customs and practices that are subject to this motion to amend in *Leftwich I*; however, in *Leftwich II*, Plaintiff adds three individually named defendants, rewrites his factual allegations, and asserts other additional claims. (*See Leftwich II*, Doc. No. 1.) *Leftwich II* was reassigned to District Judge Joan N. Ericksen and the undersigned on February 21, 2019. (*Leftwich II*, Doc. No. 8.) On March 4, 2019, the Defendants in *Leftwich II* filed a motion to dismiss the new case. (*Leftwich II*, Doc. No. 11.) Judge Ericksen referred the motion to dismiss in *Leftwich II* to the undersigned for a Report and Recommendation. (*Leftwich II*, Doc. No. 27.) Plaintiff's response to Defendants' motion to dismiss in *Leftwich II* was filed on March 25, 2019. (*Leftwich II*, Doc. No. 30.) Defendants' reply was filed on April 8, 2019. (*Leftwich II*, Doc. No. 32.) A hearing on the motion to dismiss in *Leftwich II* is set for April 22, 2019. On March 5, 2019, Plaintiff filed a Motion to Consolidate Cases or in the Alternative, Motion to Alter/Amend/Supplement Pleadings. (Doc. No. 61.) In that motion, Plaintiff seeks consolidation of the two cases, and in the alternative, if the Court believes consolidation is not appropriate, Plaintiff requests that the complaint in *Leftwich II* be treated as the amended complaint in *Leftwich I*. Plaintiff has not withdrawn this motion to amend. Plaintiff's second motion—for consolidation, or in the alternative, to amend—will be addressed in a subsequent order.

**I.     Background**

Plaintiff filed his Complaint on April 27, 2018. (Doc. No. 1.) An Order setting a Pretrial Conference was issued on May 2, 2018. (Doc. No. 10.)[3] Rule 26(f) reports were filed on May 22, 2018. (Doc. Nos. 21, 22.)[4] The parties jointly proposed that motions seeking to join other parties "must be filed and served by August 27, 2018," and that motions seeking to amend the pleadings "must be filed and served by October 29, 2018." (*See* Doc. No. 21 at 8; Doc. No. 22 at 8.) A two-hour Pretrial Conference was held on May 25, 2018. (Doc. No. 23.) The Pretrial Scheduling Order was entered on May 29, 2018. (Doc. No. 24.) The front page of the Scheduling Order set forth the requirement of good cause to amend the Scheduling Order. The front page also noted: "this Pretrial Scheduling Order has been prepared with the input of counsel for the parties and the parties are required to diligently work to meet the deadlines." (*Id.*)

---

[3]     There are two groups of Defendants in this action: The Eagan Defendants (City of Eagan, Jennifer Wegner, Brian Rundquist, and Brian Renzy) and the County Defendants (County of Dakota, Caleb Kocher, Kent Themmes, and Cody Swanson). Defendants answered Plaintiff's Complaint in this matter on June 28 and July 3, 2018. (Doc. Nos. 26, 27.)

[4]     The parties' 26(f) Reports presented different positions on the limits for written discovery requests. The Court discussed this dispute at the conference, and set limits based on the discussion. The undersigned made clear that if there was good cause for additional requests, the Court would increase the limits. No party sought any amendment to the Scheduling Order until this motion was filed on January 2, 2019.

The Scheduling Order adopted the amendment deadlines and discovery deadlines proposed by Plaintiff and Defendants. (*Id.*)[5] Importantly, the amendment deadlines included a separate provision requiring the parties to "diligently pursue any further investigation or discovery to meet this deadline." (*Id.*)

### **NON-DISPOSITIVE MOTION DEADLINES**

1. Motions seeking to join other parties must be filed and served by **August 27, 2018**. The parties must diligently pursue any further investigation or discovery to meet this deadline.

2. Motions seeking to amend the pleadings must be filed and served by **October 29, 2018**. *The parties must diligently pursue any further investigation or discovery to meet this deadline.*

(Doc. No. 24 at 5 (emphasis added).)

On January 2, 2019—the day fact discovery closed—Plaintiff filed this motion to amend. Plaintiff's motion was filed more than two months after the October 29, 2018 deadline expired. Plaintiff seeks to add the following redlined language to his original Complaint:

> 136. Specifically, the City had <u>several customs and practices that amounted to a failure to provide adequate medical and mental health care for individuals taken into custody by the City of Eagan, including but not limited to</u>:

---

[5] The section on discovery limits permitted Plaintiff the opportunity to take up to 15 factual depositions. (Doc. No. 24.) The Scheduling Order also required the parties to meet and confer about the scheduling of all fact depositions no later than October 15, 2018. (*Id.*) It is unclear whether the parties' conference included any discussion of the fact depositions that Plaintiff later sought in his November 20, 2018 notices. Either way, this date should have triggered a review of the need for fact depositions prior to the upcoming October 29, 2018 amendment date.

4

a. a custom and practice of having officers who did not interview any known witnesses complete the Offender Tracking Form, without making any effort to obtain any information from the interviewing officers;
b. a custom and practice of default responding "No" to medical and mental health information on the Offender Tracking Form, without reviewing with any officers or witnesses such information, when transmitting the form to the Dakota County Jail;
c. a custom and practice of sending the Offender Tracking Form prior to any investigation or obtaining any information from known witnesses, and nonetheless responding "No" to medical and mental health information, rather that "Unknown;"
d. a custom and practice of withholding medical and mental health information from the Dakota County Jail, except, in limited cases, providing extremely limited information in a two-line sentence fragments, without detail; and
e. a custom and practice of failing to provide updated or supplemental information to the Dakota County Jail, after receiving medical and mental health information from witnesses, following reporting "No" that no such information had been provided.

And, the County had several customs and practices that amounted to a failure to provide adequate medical and mental health care for individuals detained in the Dakota County Jail, including but not limited to:

a. a custom and practice of only treating an inmate as suicidal if either the Offender Tracking Form or the inmate himself explicitly stated that he was suicidal, regardless of suicidal ideation;
b. a custom and practice of entering "No" as a default to all mental health screening and assessment questions, unless an inmate voluntarily identified a mental health concern;
c. a custom and practice of failing to provide any medical or mental health screening, in particular for suicidal ideation, by any qualified medical or mental health professional within the first 48 hours of detention, when inmates are most at risk for suicide; and
d. a custom and practice of failing to provide emergency monitoring or response to inmates suffering medical and/or mental distress, once they are locked into cells at "lockdown," for vulnerable inmates, in particular suicidal inmates, who whether by physical or vocal limitation are unable to get the attention of the on duty unit deputy, who sits in some cases over 50 feet away from cells and cannot hear inmates in distress.

(Doc. No. 30-1, Proposed Am. Compl.)

## II. Analysis

### A. Standard of Review

As stated above, Plaintiff did not file his Motion for Leave to File an Amended Complaint until after the deadline expired. Accordingly, the lenient standard of Federal Rule of Civil Procedure 15(a) (allowing leave to amend when justice so requires) is inapplicable. Fed. R. Civ. P. 15(a). Instead, Rule 16(b)(4) governs, and leave to amend the pleadings shall only be granted when the movant can show good cause. *See* Fed. R. Civ. P. 16(b)(4); *Target Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d 999, 1004 (D. Minn. 2013) ("[W]hen a motion to amend is filed after the expiration of the applicable deadline in the Court's Scheduling Order, Rule 15(a)'s permissive test no longer applies, and instead the tougher 'good cause' standard applies under Rule 16(b)(4)."); *Equal Empl. Opp. Comm. v. Hibbing Taconite, Co.*, 266 F.R.D. 260, 265 (D. Minn. 2009) (quoting *Alholm v. Am. Steamship Co.*, 167 F.R.D. 75, 77 (D. Minn. 1996)) ("Where . . . the deadline for the amendment of the pleadings has expired, the propriety of an extension, so as to allow consideration of a Motion to Amend, 'is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure.'") If the Court were to apply Rule 15(a) to a motion to amend when the scheduling order deadline has passed, Rule 16(b)(4) and its good cause requirement would essentially be read out of the Federal Rules of Civil Procedure. *See Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 n.1 (D. Minn. 2000) (citing *In re Milk Products, Antitrust Litig.*, 195 F.3d 430, 437–38 (8th Cir. 1999)).

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). The focus of this "exacting" test is on the diligence with which the moving party attempted to comply with the scheduling order's deadlines, not on the prejudice to the non-moving party. *Scheidecker*, 193 F.R.D. at 632 n.1; *Metro Produce Distribs., Inc. v. City of Minneapolis*, 473 F. Supp. 2d 955, 964 (D. Minn. 2007). Ultimately, in applying Rule 16(b) to the circumstances presented here, the Court asks whether the moving party has demonstrated "that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 581–82 (D. Minn. 1999) (internal quotation marks omitted).[6]

---

6    At the January 22, 2019 hearing, Plaintiff opened his argument as follows:

> First and foremost is sort of a predicate question, and there are two ways in which the Court can see this issue, whether it is one of mootness and the Court does not even need to decide this issue at this point, or whether this informs the Court's decisions. But the issue here is Plaintiffs are seeking to amend the complaint solely for the purpose to add additional customs and practices. We're not adding or subtracting defendants. We're not changing any theories of law. We're simply expanding upon what we've already identified, and, in particular, by listing additional custom and practices that the City and the County had that were - - that came about during the course of discovery. The predicate question, of course, is whether an amendment is even necessary. . .

(1/22/19 Hr'g Tr. 3–4.) Plaintiff cited *Crumpley-Pattersen v. Trinity Lutheran Hospital*, 388 F.3d 588 (8th Cir. 2004) for the proposition that "customs and practices don't even need to be plead at all so long as you are giving - - you know, the complaint gives reasonable notice. That's the predicate issue." (*Id.* at 6–7.) Relying on *Crumpley*, Plaintiff took the position that his amendment proposals were unnecessary and should be

(Footnote Continued on Next Page)

### B. Plaintiff's Lack of Diligence

Plaintiff argues that he did not have information to form his additional claims prior to the October 29, 2018 deadline because he only learned of the new customs and practices through fact depositions that were taken in December.[7] Plaintiff, however, elected to notice the Rule 30(b)(6) depositions on November 15, 2018, and the individual defendants on November 20, 2018, for dates in December. (Doc. No. 34, Affidavit of Jeffrey A. Timmerman ("Timmerman Aff.") ¶¶ 9–11.) In other words, Plaintiff did not seek to take *any* fact depositions until weeks after the deadline for amending the

---

(Footnote Continued From Previous Page)
construed as additional support for his constitutional claim under Section 1983. Defendants disagreed, arguing that Plaintiff seeks to add new claims, citing to *Ulrich v. Pope County*, 715 F.3d 1054 (8th Cir. 2013) for the proposition that the custom and policy must be identified and linked to the facts in the complaint "such that the Court can plausibly infer that the policy or custom is a motivating force behind the alleged constitutional violation." (1/22/19 Hr'g Tr. 62.) The Court need not determine whether the new proposed amendments need to be pleaded or are sufficiently plead. The only issue before the Court is whether Plaintiff has shown good cause to amend the Scheduling Order pursuant to Rule 16 to add the new custom and policy claims as proposed.

[7]    Defendants disagree that information was not available to Plaintiff prior to the amendment deadline. For example, Plaintiff seeks to add a claim against the County for failing to have an inmate's health assessed by a mental health professional within the first 48 hours of incarceration. (Second Ray Decl. ¶ 18b.) The County produced documents stating that inmate health is typically assessed by nursing staff within three days of their incarceration, but inmates who display significant mental health issues during intake are seen the next day or immediately via on-call medical services. (*See* Doc. No. 55, Supplemental Affidavit of Jeffrey A. Timmerman ("Suppl. Timmerman Aff.") ¶¶ 7–8, Exs. 1–2.) These documents were produced on August 27, 2018, two months before the amendment deadline. (*See id.*) At a minimum, however, Plaintiff had enough information to approach the Court with a proposed amended schedule if he could not meet the deadlines imposed for some reason.

8

pleadings had expired. Any delay in scheduling fact depositions was self-imposed by Plaintiff.

Plaintiff also takes the position that his late request to amend should be granted because the deadline for completing discovery in the Scheduling Order was "much longer than the deadline to amend the pleadings." (Pl.'s Supp. Br. 10.) Plaintiff's argument has no merit. In asserting this position, Plaintiff ignores the unambiguous language in this Court's Scheduling Order providing that any discovery needed to meet the amendment deadlines must be diligently pursued before the deadline expires. The deadline for amending the pleadings was intentionally set a couple of months before all fact discovery closed on January 2, 2019, so that discovery could be conducted on any permitted amended pleadings within the fact discovery period. Plaintiff's counsel appeared to recognize this at the hearing. (1/22/19 Hr'g Tr. 29–30.) And even if the depositions resulted in the discovery of new information, as discussed above, this information was available to Plaintiff earlier in the litigation. *See Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. 09-CV-1091, 2010 WL 4193076, at *6–7 (D. Minn. Oct. 7, 2010)) ("[A] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation."). Courts in other circuits apply a similar standard. *See, e.g.*, *Cook v. Howard*, 484 Fed. App'x. 805, 818 (4th Cir. Aug. 24, 2012.) ("failure to seek information from any one of these witnesses at an earlier date meant that they could not pursue any leads those witnesses provided in time to make a timely amendment. In view of these readily apparent avenues available to the Appellants and yet left entirely unexplored, they have merely evinced an

earlier desire to know something and have not demonstrated they acted—with diligence or otherwise—in timely pursuing that knowledge.").

Plaintiff also contends that his late amendment is justified because the Defendants' responses to written discovery gave Plaintiff "no reason to believe or even know that there would be counter-deposition testimony." (1/22/19 Hr'g Tr. 11.) In his supplemental brief, Plaintiff states:

> In each case, no indication of the alleged custom and practice had been previously disclosed and to the contrary, the discovery produced by the Defendants conflicted with the proposed custom and practice claim, preventing Plaintiff from reasonably and ethically asserting such a claim, without further evidence that he had no reason to believe existed at the time, and indeed, <u>based on discovery produced by defendants was lead to believe did not exist</u>, prior to the motion to amend deadline in the original scheduling order.

(Doc. No. 45, Pl.'s Supp. Br. 4) (emphasis in original). The Court has reviewed Plaintiff's briefs, including both affidavits, in addition to relevant case law, and finds Plaintiff's argument unpersuasive.

First, Plaintiff argues that he diligently pursued discovery on *all* customs and practices, yet most of his examples point to written policies sought in Rule 34 *document* requests. (*See id.*) Indeed, Plaintiff's counsel admits the new customs and practices were "only discoverable by deposition, as they were not written or otherwise disclosed in any written discovery." (Doc. No. 31, Declaration of John H. Ray, III ("First Ray Decl.") ¶ 3; *see also* Second Ray Decl. ¶ 39.) Thus, this Court is not persuaded that Defendants misled Plaintiff about unwritten customs and practices in responding to document requests.

Second, Plaintiff claims he was misled by Defendants' answers to Interrogatories 1 and 4. Interrogatory No. 1, to the Eagan Defendants, is set forth below:

> State the basis for any response "no" to the question "Has this arrestee's friends or family members suggested any medical or mental issues (including suicidal tendencies)" on the Offender Tracking Form for Cameron Leftwich, dated October 27, 2016, including but not limited to identifying all interviews, reports, or other information relied upon in making the determination, and the person or persons who prepared and transmitted the report, including the circumstances surrounding its preparation an transmission.

(Doc. No. 35, Affidavit of Daniel P. Kurtz ("Kurtz Aff.") ¶ 5; Doc. No. 46-23 at 2.) The Eagan Defendants answered, stating:

> Sergeant Wegner filled out the Offender Tracking Form. She had no knowledge that any of Cameron Leftwich's friends or family members suggested he had any mental health concerns.

(*See* Kurtz Aff. ¶ 5; Doc. No. 46-23 at 2.) Plaintiff argues that the Eagan Defendants failed to "disclose any information concerning the circumstances around its transmission." But the structure of Interrogatory No. 1 could be interpreted to call for additional information only if the Form had been filled out with knowledge from friends or family members. If Plaintiff believed that information related to the transmission and preparation of the Offender Tracking Form was within the scope of Interrogatory No. 1, and unanswered, he could have requested a complete answer.

Interrogatory No. 4 asked all Defendants the following:

> Describe in detail all education, courses, training, or certifications You required, provided or received related to the Dakota County Jail or the Eagan Police Department, or as an officer or employee thereof, including any of Your experience, qualification or other knowledge, regarding the identification, documentation, communication or reporting of mental health issues, suicidal ideation or tendencies, or individuals who pose a risk of harm to themselves. (Doc. No. 46-14 at 10; Doc. No. 46-22 at 4.)

11

In their answers, Defendants told Plaintiff that they interpreted Interrogatory No. 4 as seeking information about *all training and education*. Defendants timely objected to the interrogatory's overbreadth and offered a subset of information. (*See* Doc. No. 46-14 at 11; Doc. No. 46-22 at 4.) Even if Interrogatory No. 4 could be interpreted to cover all unwritten customs and practices, Plaintiff did not seek a more complete answer.[8]

Plaintiff's examples do not support a showing of diligence. Indeed, many of Defendants' interrogatory answers and objections put Plaintiff on notice—all the way back to August of 2018—that a full narrative account would not be provided in response to various interrogatories and that fact depositions were the more appropriate discovery vehicle for narrative information. (*See* Doc. No. 46-15 at 9 ("The County Defendants object . . . inasmuch as it seeks a narrative account of their case and/or information more properly obtained via deposition discovery.").) In light of written discovery responses and objections, Plaintiff was on notice that fact depositions might disclose additional information long before the October 29, 2018 amendment deadline.

Finally, Plaintiff argues that diligence is not necessarily required, citing to *Portz v. St. Cloud State Univ.*, No. CV 16-1115 (JRT/LIB), 2017 WL 3332220, at *3 (D. Minn. Aug. 4, 2017).[9] It may be possible, as Plaintiff suggests, that circumstances in a specific

---

[8] The Court does not take any position about whether Defendants' objection would have been sustained. The point is that Plaintiff was on notice that depositions might be necessary.

[9] Chief Judge Tunheim, however, found that the moving party in *Portz* had "shown sufficient diligence." *Id.* at *4.

case might justify an extension in the absence of a showing of diligence based on other facts that establish good cause; however, Plaintiff has presented no other basis for this Court to find good cause pursuant to Rule 16's requirements.[10]

"The Court has broad discretion to establish and enforce scheduling deadlines and should construe and administer Rule 16 to secure the just, speedy, and inexpensive determination of the action." *Diocese of St. Cloud v. Arrowood Indem. Co.*, Civil No. 17-2002 (JRT/LIB), 2019 WL 79003, at *3 (D. Minn. Jan. 2, 2019) (internal quotation omitted). Adherence to the Scheduling Order in this case is aligned with Rule 1, which applies to all parties. "Scheduling orders pursuant to Rule 16(b)(1) assure that at some

---

[10] For example: (1) Plaintiff argues that counsel could not have reasonably reviewed all the documents that were produced and then prepared for and taken the depositions by October 29, 2018. (Doc. No. 30, Pl.'s Mot. 3–4.) This excuse does not establish diligence. The schedule proposed by Plaintiff, and adopted by this Court, contemplated that documents would be produced during this time period. And, the volume of the document production was driven by the scope of Plaintiff's requests. (2) Plaintiff complains that as of February 5, 2019, Defendants "still have electronic and other document productions outstanding, and have indicated at least as to electronic discovery, they are producing 7,000 emails." (Second Ray Decl. ¶ 8.) This point underscores the Plaintiff's lack of diligence. According to Defendants, the County requested that Plaintiff propose custodians and search terms on July 25, 2018, and Plaintiff did not propose custodians and search terms until December 28, 2018—after the amendment deadline. (*See* Suppl. Timmerman Aff. ¶¶ 2–3.) The County then collected more than 225,000 emails, reviewed approximately 7,000 emails, and produced 49 pages of responsive documents on February 7, 2019, many of which are duplicative of previously produced documents. (*Id.* ¶¶ 4–5.) (3) Plaintiff complains that Defendants' documents were produced in individual TIFF files, requiring a lengthy and time-consuming process for review. (Doc. No. 46, Second Declaration of John H. Ray, III ("Second Ray Decl.") ¶ 7.) Apparently, this was the format Plaintiff specifically requested. (Doc. No. 54, Defs.' Joint Supp. Br. 8 n.6.) Moreover, if this was not the case, the Scheduling Order provided that any disputes about the plan and protocol for electronic discovery would be presented to the Court by July 31, 2018. (Doc. No. 24 at 2.) Plaintiff had every opportunity to seek a different format for document production.

point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the pleadings amended." Rule 16(b), Federal Rules of Civil Procedure, advisory committee notes—1983 Amendment. Plaintiff concedes that he sought the schedule adopted by the Court. (1/22/19 Hr'g Tr. 23.) "A scheduling order is an important tool in controlling litigation. A magistrate judge's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. Scheduling orders have become increasingly critical to the district court's case management responsibilities because it is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars." *Luigino's, Inc. v. Pezrow Companies*, 178 F.R.D. 523, 525 (D. Minn. 1998) (internal citations and quotations omitted).

Plaintiff elected to wait until two months after the amendment deadline—and at the tail-end of fact discovery—to depose a single fact witness. These fact witnesses were not obscure witnesses or witnesses later disclosed in written discovery; they were the individually-named parties and City and County 30(b)(6) designees. Plaintiff could have easily heeded the Court's Scheduling Order to take any discovery—including fact depositions—needed in time to meet the motion to amend deadline. Alternately, Plaintiff could have pursued the allegedly unanswered written discovery before the amendment deadline approached. Finally, he could have sought to amend the deadlines to allow additional time to take his fact depositions before the deadline to amend expired. Plaintiff has not established good cause for amending the Scheduling Order now.

# ORDER

Based on the parties' submissions, and on the file, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

Plaintiff's Motion to Amend Scheduling Order to Extend Time and to Amend Complaint (Doc. No. 30) is **DENIED**.

Date: April 9, 2019.

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge
